UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNIFER TRUJILLO,

    Plaintiff,

v.

WAL-MART STORES INC,

    Defendant.

CASE NO. C17-5909 BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") Motion for Summary Judgment. Dkt. 23. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

This slip and fall negligence action arises out of an injury sustained by Plaintiff Jennifer Trujillo ("Ms. Trujillo") while at a Wal-Mart store in Puyallup, Washington.

On October 6, 2017, Ms. Trujillo filed a complaint in the Pierce County Superior Court for the State of Washington. Dkt. 1-2. Ms. Trujillo asserts a negligence action as a business invitee of Wal-Mart. *Id*. On November 2, 2017, Wal-Mart removed the action to

ORDER - 1

this Court. Dkt. 1. On September 12, 2018, Wal-Mart moved for summary judgment. Dkt. 23. On October 15, 2018, Ms. Trujillo responded. Dkt. 27. On October 18, 2018, Wal-Mart replied. Dkt. 28.

## II. FACTUAL BACKGROUND

On September 6, 2015, Ms. Trujillo was at the Wal-Mart store shopping for groceries with her family when she slipped and fell in the soup aisle. Dkt. 27 at 3–4. Ms. Trujillo testified that while shopping in the soup aisle, she walked around an abandoned shopping cart that was in her way. Dkt. 27-1, Declaration of John Acken ("Acken Decl."), Ex. 13 (Deposition of Jennifer Trujillo ("Trujillo Depo.") at 43).[1] She testified that the cart contained merchandise, but that she could not identify the items. *Id.* After walking around the cart, she slipped and fell in water. *Id.* She did not see the water on the floor before falling in it. *Id.* at 46. Ms. Trujillo testified that she knew she fell in water because it was clear and on her clothes, her feet, and the floor. *Id.* Wal-Mart's incident report confirms the presence of water on the floor. Acken Decl., Ex. 1.

Wal-Mart surveillance video leading up to Ms. Trujillo's fall shows six Wal-Mart employees walking past the shopping cart, and a customer moving the shopping cart a short distance down the aisle. Acken Decl., Ex. 12 at 43–44. Ms. Trujillo also observed a young male employee in the area stocking shelves. Dkt. 25, Declaration of Colin J. Troy ("Troy Decl."), Ex. 1, Trujillo Depo. at 43. After she fell, this employee came and

---

[1] Because both parties cite Ms. Trujillo's deposition, the Court refers to the original numbering on the deposition transcript instead of the ECF pagination. For consistency, the Court also refers to original numbering for all other cited depositions.

cleaned up the water with paper towels. *Id.* at 55–57. Micah Roth ("Mr. Roth"), Store Manager on the day of the incident, submitted a declaration informing the Court that this Wal-Mart did not "stock, store, or sell water" in the canned soup aisle. Dkt. 26, Declaration of Micah Roth ("Roth Decl.") at 1. Mr. Roth declared that this Wal-Mart has many policies and procedures focused on prevention of slip and fall accidents, and that "Wal-Mart employees at Store #2403 visually inspect the floor constantly while they are working for the purpose of identifying and remediating potential hazards, including spilled items." *Id.* at 1–2. Mr. Roth also declared that at this Wal-Mart, if an employee notices a foreign substance or hazard on the floor, "the employee remains by the substance until a cone is placed or until the substance is cleaned up," and affirms that these policies were in place on September 6. *Id*. Wal-Mart's Safety Toolkit instructs employees that they should "return empty shopping carts to the front" and not "leave carts unattended on the salesfloor." Acken Decl., Ex. 6. Mr. Roth testified at his deposition that that this cart policy is to "keep the store neat and clean . . . to keep it neat and clean and free of hazards, I guess." Acken Decl., Ex. 11 at 37. Mr. Roth also declared that the store employs maintenance associates specifically tasked with store cleanliness, including floor maintenance, and affirmed that a maintenance associate was working on September 6. Roth Decl. at 2. Finally, Mr. Roth declared that the canned soup aisle "was not in the direct vicinity of the produce department, self-checkout stations, or any other areas that may create a heightened risk of spilled items." Roth Decl. at 2.

  Ms. Trujillo was seventeen weeks pregnant at the time of her fall, and sought medical attention for left knee pain which radiated to her hip and lower leg. Dkt. 27 at 5.

## III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically

attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.  Negligence**

Ms. Trujillo asserts that she slipped and fell in water after walking around an abandoned shopping cart in the soup aisle of the Wal-Mart. Ms. Trujillo did not notice any water on the floor prior to her fall, nor did she have personal knowledge of how long the water had been on the floor. Trujillo Depo. at 45–46, 52. It is undisputed that Ms. Trujillo was Wal-Mart's business invitee. Dkt. 23 at 4 n.15. In general, for a possessor of land to be liable to a business invitee for an unsafe condition of the land, the possessor must have actual or constructive notice of the unsafe condition. *Ingersoll v. DeBartolo, Inc.,* 123 Wn.2d 649, 652 (1994) (citing *Smith v. Manning's, Inc.*, 13 Wn.2d 573 (1942)).[2] It is the invitee's burden to show that the premises owner had actual or constructive notice of the hazard, *Tavari v. Walmart Stores, Inc.*, 176 Wn. App. 122, 307 (2013), unless "the particular self-service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable," *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 41 (1983). The circumstances described in *Pimentel* are referred to as

---

[2] Wal-Mart bases its motion only on the issue of notice, "[a]ssuming *arguendo* that the mere presence of water on the floor was an unreasonably dangerous condition." Dkt. 23 at 5.

the 'self-service exception,' and require the jury to determine "whether the proprietor has taken all reasonable precautions necessary to protect his invitees from these foreseeable risks." *Id.*

Wal-Mart moves for judgment, arguing that Ms. Trujillo failed to establish Wal-Mart had actual or constructive notice of the water, and the self-service exception does not apply. Dkt. 23 at 1, 7. Ms. Trujillo makes a number of counterarguments, including that notice should be inferred because of Wal-Mart's spoliation of video evidence. Dkt. 27 at 2. Because Ms. Trujillo presents evidence from which a reasonable juror could conclude her case satisfies the self-service exception, the Court denies Wal-Mart's motion on that issue.

### 1. Constructive Notice

Ms. Trujillo does not argue Wal-Mart had actual notice of the water on the floor. *See* Dkt. 27 at 2. She argues Wal-Mart had constructive notice of the water, or that Wal-Mart and its associates caused the unsafe condition. Dkt. 27 at 13. To show constructive notice, the plaintiff must demonstrate that the condition "has existed for such time as would have afforded him sufficient opportunity, in the exercise of ordinary care, to have made proper inspection of the premises and to have removed the danger." *Wiltse v. Albertson's, Inc.*, 116 Wn.2d 452, 458 (1991) (en banc). The "permissible period of time for discovery" depends in large part "upon the opportunity for discovery open to the defendant's employees by reason of their number, their physical proximity to the hazard, and in general, the likelihood they would become aware of the condition in the normal course of duties." *Morton v. Lee*, 75 Wn.2d 393, 397 (1969). In *Morton*, the plaintiff

slipped on an apricot in a walkway outside a food market. *Id.* at 394. Conclusive testimony established only that the apricot had been on the ground for five minutes. *Id*. at 397. However, the court considered the store's housekeeping practices with respect to the display stand—sweeping the walkway once per day in the morning unless the staff became aware of an additional need, and instructing all employees "to pick up any litter or debris whenever they saw it"—circumstantial evidence from which the jury could have concluded the required care was not exercised. *Id*. at 396. In contrast, in *Wiltse*, the plaintiff slipped and fell in water which had dripped through a sudden leak in the store roof. 116 Wn.2d at 453. Two store employees testified they had walked "past the location of the plaintiff's fall minutes before the accident happened" and failed to notice any substance on the floor. *Id.* at 455. The court found "no evidence of notice, constructive or actual, on the part of the defendant." *Id*. at 459.

Ms. Trujillo relies on *Morton* to suggest that Wal-Mart's housekeeping practices may demonstrate Wal-Mart was not exercising ordinary care, and Wal-Mart would have discovered the water if it had used ordinary care. Dkt. 27 at 13 (citing *Morton*, 75 Wn.3d at 397–98). However, as Wal-Mart points out, the housekeeping practices in *Morton* were assessed in the context of an item from the store's own display, and here, Ms. Trujillo has not provided evidence to show the water came from a Wal-Mart display or otherwise resulted from Wal-Mart's operations such that Wal-Mart should have been aware of it. Dkt. 28 at 4 (citing *Morton*, 75 Wn.2d at 397–98).

Ms. Trujillo makes three related points: (1) the abandoned shopping cart was in the soup aisle for over an hour before her fall, (2) liquid items or defrosting frozen items

in abandoned carts may cause hazards, and (3) Wal-Mart employees are expected to take abandoned shopping carts to the front of the store because they might otherwise create a hazard. Dkt. 27 at 3–4 (citing Acken Decl., Ex. 11 at 37–38). Ms. Trujillo argues "there is sufficient evidence for the jury to conclude that Wal-Mart and its associates caused the unsafe condition, and that based on the facts and circumstances surrounding Trujillo's fall, Wal-Mart associates should have discovered the dangerous condition in its aisle." Dkt. 27 at 13. Ms. Trujillo does demonstrate that six Wal-Mart employees walked past the cart, Acken Decl., Ex. 12 at 43–44, but presents no evidence other than the circumstantial evidence of the presence of water on the floor near the cart to suggest water came from the cart.

Circumstantial evidence in the record could support an inference that the water came from merchandise in the cart. The surveillance tape shows at least fifty-four minutes of activity in the soup aisle prior to Ms. Trujillo's fall, including six Wal-Mart employees passing the cart. Dkt. 27 at 6–7. Neither party argues anything in the video suggests a source of water during that period other than items in the cart. It is possible the water was concealed by the cart until the customer walking past pushed the cart further down the aisle, Acken Decl., Ex. 12 at 43–44, but it is similarly possible that some liquid dislodged in the cart and spilled when the customer, the last person to pass through the aisle before Ms. Trujillo, pushed it. Dkt. 27 at 14. Even considering this circumstantial evidence, Ms. Trujillo has not met her burden to provide specific evidence from which a jury could evaluate whether any of the six employees actually passed a cart at a time when water was near it such that they could have discovered it. *Wiltse,* 116 Wn2d at 258.

Without some actual evidence suggesting the origin of the water and its duration on the floor, a reasonable jury could not conclude by a preponderance of the evidence that Wal-Mart had constructive notice of the water prior to Ms. Trujillo's fall. Therefore, the Court grants Wal-Mart's motion on the issue of constructive notice.

### 2. Self-Service Exception

Ms. Trujillo also argues that under *Pimentel*, actual or constructive notice need not be shown when "the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." 100 Wn.2d at 49. When a plaintiff meets this standard, she need not prove actual or constructive notice, and may proceed to prove that the defendant "failed to take reasonable care to prevent the injury." *Id.*

In *Ciminski v. Finn Corp., Inc.*, the plaintiff slipped in a damp spot in line at a self-service restaurant. 13 Wn. App. 815, 820–21 *rev. denied* 86 Wn.2d 1002 (1975). The court reasoned that customers handling merchandise in self-service restaurants and supermarkets use less attention and care than employees would, creating a greater likelihood of spills. 13 Wn. App. at 819. Therefore, the court found, risk of harm to customers in a self-service restaurant is sufficiently probable such that the plaintiff need not show actual or constructive notice, and the jury must instead determine "whether the proprietor has taken all reasonable precautions necessary to protect his invitees from these foreseeable risks." *Id.* at 820–21.

In *Pimentel,* the court declined to apply the rule articulated in *Ciminski* to all self-service establishments, limiting it to circumstances where "the particular self-service

operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable." 100 Wn.2d at 41, 50 (remanding to allow plaintiff opportunity to prove paint can overhanging shelf created reasonably foreseeable unsafe condition). Washington courts have applied *Pimentel* to a slip and fall on lettuce at a grocery store check-out where customers set their own items on the conveyer belt, *O'Donnell v. Zupan Enterprises, Inc.*, 107 Wn. App. 854 (2001), but declined to apply it to an injury from a broken chair in a coffee shop featuring secondhand chairs maintained without a formal system, *Fredrickson v. Bertolino's Tacoma, Inc.*, 131 Wn. App. 183 (2005), or to a slip and fall on water in a self-service grocery store when the water dripped through a sudden leak in the store roof, *Wiltse*, 116 Wn.2d at 454–456.

Wal-Mart cites three cases to demonstrate why *Pimentel* does not apply here: *Tavai v. Walmart Stores, Inc*, 176 Wn. App. 122 (2013), *Carlyle v. Safeway Stores, Inc.*, 78 Wn. App. 272 (1995), and *Charlton v. Toys "R" Us—Delaware, Inc.*, 158 Wn. App. 906 (2010). Wal-Mart argues these cases show that water in the soup aisle was not reasonably foreseeable, "because there is no nexus between the water on the floor of Wal-Mart's soup aisle and some high risk location." Dkt 23 at 9. Wal-Mart notes that the soup aisle contains all dry groceries, and "there is no evidence of any previous indications of water on the ground in the same part of the store, no problems with the way Wal-Mart stocks its merchandise, or anything else to indicate Wal-Mart should have taken unique precautions." Dkt. 23 at 9.

In *Tavai*, the plaintiff slipped on a wet floor fifteen feet from a check-out counter. 176 Wn. App. at 126. The court concluded that the plaintiff was sufficiently far from the

check-out counter to avoid the self-service issue, and reasoned that a history of falls in the store did not establish that the particular area where this plaintiff slipped would foreseeably feature unsafe conditions. *Id*. at 131–32. In *Charlton*, the plaintiff slipped on water inside a Toys R Us store just after crossing the floor mats at the door on a snowy day. 158 Wn. App. at 909. The plaintiff did not present evidence about "how water got on the floor of the entryway, how long the water had been on the floor, or when the floor had last been mopped and dried by store employees." *Id*. Toys R Us moved for summary judgment, relying only on the lack of evidence of a dangerous condition and a lack of notice. *Id.* The court held *Pimentel* did not apply because the store entryway was not a self-service area, and there was no relationship between the self-service operation of the toy store and water on the floor. *Id*. at 916–18.[3] In *Carlyle*, the plaintiff slipped on a leaking shampoo bottle in the coffee aisle of a Safeway. 78 Wn. App. at 278. The court held that the plaintiff "failed to produce any evidence from which it could be inferred that the nature of Safeway's business and its methods of operations are such that unsafe conditions are reasonably foreseeable in the area in which she fell." *Id*. at 277.

Under these precedents Ms. Trujillo must produce evidence from which it could be inferred that given the nature of Wal-Mart's business and methods of operation, the canned soup aisle was an area where unsafe conditions were reasonably foreseeable. *Id.* at 277. Wal-Mart argues that "the water was in a regular dry aisle, not an area of the store

---

[3] The *Charlton* court also reviewed Washington law on wet floors, concluding that plaintiffs must present evidence that a particular wet floor creates an unreasonable risk, and the presence of water alone is insufficient. *Id*. at 913–15. The Court does not analyze this issue here, because Wal-Mart does not move for judgment on this basis. Dkt. 23 at 5.

ORDER - 11

such as the produce section or self checkout [sic] station, where spills are to be expected." Dkt. 23 at 9. However, Ms. Trujillo cites a Wal-Mart document explaining that caution cones are located "in areas where there is a greater chance of spills, *such as the Dry Grocery*, and Meat and Produce department for Walmart." Dkt. 27 at 12 (citing Acken Decl., Ex. 10) (emphasis added). Caution cones are located in these areas to "allow[] for quick access when associates need one." *Id*. This specifically contradicts the characterization of the area which Wal-Mart relies on. *See Anderson*, 477 U.S. at 254–55. While in *Tavai*, even fifteen feet's distance from the self-checkout station was enough to avoid an assumption that the accident occurred in a self-service area more often subject to spills, 176 Wn. App. at 126, here, Wal-Mart itself has identified the dry grocery area as one facing a greater risk of spills. It appears highly likely that the policy reflected in this document relates to the self-service nature of the store, whether on the basis that customers would abandon frozen items or otherwise handle liquids with a lack of care while shopping. *See O'Donnell*, 107 Wn. App. at 857. While "[w]hether the *Pimentel* exception applies is often determined as a matter of law," *Charlton*, 158 Wn. App. at 918, here, the question of Wal-Mart's policy received minimal briefing, and additional facts regarding the development or application of the policy may be relevant. However, for the purpose of this motion for summary judgment on a failure to show notice, Ms. Trujillo has met her burden to establish that a question of material fact exists on the issue of whether Wal-Mart knew that an unsafe condition was reasonably foreseeable in the dry grocery area of the store. Therefore, the Court denies Wal-Mart's motion without prejudice on the *Pimentel* exception.

In this case, as well as previous similar cases, it is concerning that a store's safety policy alone establishes the element of notice under the *Pimentel* exception. For example, if Wal-Mart enacts a policy stating that safety cones should be located in certain areas as preventative maintenance, then an injured plaintiff can identify the policy as a concession that Wal-Mart considers that particular location as one where unsafe conditions are reasonably foreseeable. Such an implicit rule could influence self-service operations to forgo safety policies in anticipation of potential litigation. Thus, the Court invites a subsequent motion on this issue if additional evidence exists to establish that this particular spill was not reasonably foreseeable in this particular area. *See Linehan v. Safeway Stores, Inc.*, 115 Wn. App. 1042 (2003) ("such spills were foreseeable in the specific area where she fell."). Moreover, Wal-Mart may be able to establish that it is unreasonable to infer from the cited policy that water spills were reasonably foreseeable in this aisle. Regardless, Ms. Trujillo must also establish that Wal-Mart failed to adequately inspect this area. *See, e.g.*, *id.* at *2 ("the defendant is considered to be on constant notice that spills and hazards will occur in the normal course of business, and a plaintiff can therefore show negligence by demonstrating that the defendant failed to engage in periodic inspections with the frequency required by the foreseeability of the risk.").

**C.    Spoliation**

Ms. Trujillo cites the deposition of Darcy Dwarshuis, asset protection assistant store manager, showing that some portion of the accident records including video from this incident are missing. Acken Decl., Ex. 12 at 22–23 ("So we do not know what

happened with this file. CMI doesn't have it home, office doesn't have it, Iron Mountain doesn't have it, we don't have it. We spent hours and hours and days looking through all of our files for this."). Ms. Trujillo argues that additional surveillance video could show "(1) whether employees were performing [safety] sweeps; (2) whether sweeps were being performed correctly; (3) how long the dangerous condition of the water on the floor in aisle [sic] existed; and (4) how long the shopping cart had been abandoned prior to Trujillo's fall." Dkt. 27 at 16. Ms. Trujillo obtained an hour and forty-five minutes of video surveillance in discovery from Wal-Mart, *id*. at 43, which shows at least fifty-four minutes of activity in the soup aisle prior to Ms. Trujillo's fall, shows the fall, and shows Wal-Mart's employee cleaning the area after the fall. *See* Dkt. 27 at 6–7.

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or reasonably foreseeable litigation." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 625 (C.D. Cal. 2013). Trial courts have "broad discretionary power to . . . draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Glover*, 6 F.3d at 1329. In assessing the appropriateness of sanctions, courts generally consider "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial

unfairness to the opposing party." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 888 F.Supp.2d 976, 992 (N.D. Cal. 2012).

Litigation was likely foreseeable. Wal-Mart's incident report, completed at 11:30 am on September 6th, indicates that a customer fell and was injured. Acken Decl., Ex. 1. However, the accident file appears to have been created, so the evidence was preserved for some time, but then lost. Acken Decl., Ex. 12 at 22–23. There is no evidence of willful conduct resulting in the loss of the evidence, which is relevant to the degree of fault. *Henderson v. Tyrrell*, 80 Wn. App. 592, 609 (1996) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). Ms. Trujillo does not explain how much additional surveillance from earlier in the day would be required to adequately demonstrate the points she wishes to make, or whether the additional surveillance would have been expected to show a different camera angle, making it difficult for the Court to evaluate the degree of prejudice she may experience. The first two points, whether employees were performing safety sweeps or performing them correctly, could likely be developed through cross examination of Wal-Mart representatives about the behavior of the six employees who walked past the abandoned cart in the available footage. For the third and fourth points, the length of time water was on the floor and the length of time the cart was abandoned, earlier video footage may not provide much additional relevant information, particularly if Ms. Trujillo's theory is that the water came from the cart. On the available record, the Court reasons that the degree of prejudice Ms. Trujillo would experience may be minimal. Further, Ms. Trujillo appears to request a sanction of a rebuttable presumption that she has satisfied the requirement to prove notice. Dkt. 27 at

20–21. Because the Court finds that Ms. Trujillo has successfully created a question of material fact on the self-service exception to notice, the Court concludes that a spoliation sanction is unwarranted and unnecessary at this point in the litigation.

## IV.  ORDER

For the reasons stated herein, it is hereby **ORDERED** that Wal-Mart's motion for summary judgment, Dkt. 23, is **GRANTED in part** and **DENIED in part.**

Dated this 19th day of December, 2018.

BENJAMIN H. SETTLE
United States District Judge